FILED ____ ENTERED
LOGGED ____ RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

APR 28 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

JOYCE NABINETT,                   *

    Plaintiff,                    *

    v.                            *            CIVIL NO. JKB-20-1357

UNITED STATES OF AMERICA,         *

    Defendant.                    *

*   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Plaintiff Joyce Nabinett, a resident of Maryland, brought a negligence action against the United States of America (the "Government") under the Federal Tort Claims Act (the "FTCA" or the "Act"), seeking compensation for injuries she sustained when she slipped and fell in a Department of Energy ("DOE") building in Washington, D.C.  (*See* Am. Compl., ECF No. 7-2.) Currently pending before the Court is the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 27), filed pursuant to Rules 12(b)(1) and 56 of the Federal Rules of Civil Procedure.  (Mem. Supp. Mot. Dismiss or Summ. J., ECF No. 27-1.)  The Motion has been fully briefed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the following reasons, the Government's Motion, construed as a Motion to Dismiss, will be granted and Plaintiff's claim will be dismissed for lack of subject matter jurisdiction.

### I.  *Background*

On November 6, 2018, Plaintiff was working as a security officer at the James Forrestal Building at DOE headquarters in Washington, D.C.  (Nabinett Dep. at 17:2–5, 18:6–24, Pl. Ex. A,

ECF No. 28-3 at 3–4[1]; *see also* Taylor Dec., Gov't Ex. 3, ECF No. 27-5.)  It was raining in Washington, D.C. that day.  (Nabinett Dep. at 17:12–17, ECF No. 28-3 at 3; Boyd Report, Pl. Ex. B, ECF No. 28-4 at 4.)  When walking through the "GH corridor," Plaintiff slipped and fell. (Nabinett Dep. at 19:18–19, ECF No. 28-3 at 4.)  When she got up, she saw water on the floor and noticed that her pants and hand were wet.  (*Id.* at 19:21–23.)  Plaintiff testified that the area where she fell was between the elevators and a courtyard that people would walk through to get to the cafeteria or to use the smoking area, and that it gets "tracked with water."  (*Id.* at 23:25–25:6.) Plaintiff alleges that she sustained severe physical injuries.  (Am. Compl. ¶ 19, ECF No. 7-2.)

The DOE engages contractors to conduct maintenance functions at its facilities.  (*See* Williams Dep. at 65:9–13, Pl. Ex. C, ECF No. 28-5 at 7 ("All the maintenance stuff has been contracted out").)  At the time of Plaintiff's fall, the Government had contracted with Didlake, Inc. ("Didlake") to "provide management, supervision, manpower, equipment and supplies necessary to provide custodial and related services" at the Forrestal Building.  (Didlake Custodial Contract, Gov't Ex. 2, ECF No. 27-4 at 9.)  The contract required Didlake to "[p]olice and service main lobbies and high traffic areas for public use 3 times per day" to ensure that "[t]here shall be no evidence of . . . wet areas of any foreign substances."  (*Id.* at 36; *see also id.* at 28–29 (mandating daily cleaning of main and secondary entrances, lobbies, and corridors to be "free of . . . foreign matter).)  Cherylynne Williams, the Government's designated representative pursuant to Rule 30(b)(6),[2] testified that the custodial contractor was responsible for, among other things, "cleaning the floors," "cleaning up spills when they occur[,]" "putting down additional mats when additional

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.  When referring to deposition transcripts, pin cites to the specific page and line of the transcript are also provided.

[2] When a subpoena or notice of deposition is directed at a governmental agency, "[t]he named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  Fed. R. Civ. P. 30(b)(6).

mats are required when there are wet floors," and "mopping up floors when they get wet[.]" (Williams Dep. at 11:19–22, 12:3–6, ECF No. 28-5 at 3.)

The Didlake contract specifies that "[n]o Government direction or supervision of contractor's employees shall be exercised" and that the "contractor shall provide the name of the on-site project manager[.]" (ECF No. 27-4 at 11.) Didlake was also required to "provide and maintain an inspection system acceptable to the Government covering the services under this contract." (*Id.* at 50; *see also* Williams Dep. at 18:8–19, ECF No. 28-5 at 4 (explaining that Didlake was responsible for quality control, meaning that it had a duty to inspect the work it conducted under the contract).) Williams stated that directing the custodial workers was "the responsibility of the contractor, the Didlake personnel. They have their own management chain and they are responsible for the day-to-day management of their staff." (Williams Dep. at 17:1– 5, ECF No. 28-5 at 4.) The DOE Contracting Officer's Representative ("COR"), on the other hand, "is responsible for quality assurance, making sure that things are getting done, but not necessarily for the day-to-day operations." (*Id.* at 17:5–8; *see also,* ECF No. 27-4 at 11 (providing that the COR will administer "an extensive system of inspections of contractor performance" under the Didlake contract).) The COR on the Didlake contract was the facility manager at the Forrestal Building, Melvin Hale, a federal employee. (Williams Dep. at 9:9–10, 21, ECF No. 28-5 at 3.)

The Government also contracted with U.S. Facilities, Inc. ("USF") to "[p]rovide facility maintenance and management at the U.S. Department of Energy Headquarters facilities." (USF Maintenance Contract, Gov't Ex. 4, ECF No. 27-6 at 2.) USF's contractual duties included daily inspection of the custodial work "to ensure the [custodial] contractor is using the proper cleaning techniques and materials, and is performing their work in a safe manner in order to protect the building and its occupants"; to "resolve minor disputes with the custodial services contractors on

3

compliance/performance of the contract"; and to "ensure the custodial contractor responds to all emergency and special event calls." (USF Performance Work Statement, Gov't Ex. 5, ECF No. 27-7 at 10–11.) USF was also required to perform building operations management, including to "inspect buildings and grounds for the purpose of ensuring safe and orderly conditions, evaluate the adherence to established standards of operations and services, and determine deficiencies and initiate[] corrective actions." (*Id.* at 13.) Finally, as relevant here, USF managed a Help Desk at the Forrestal Building, which included the responsibility to "receive requests and complaints of building related problems and services from customers"; "distribute Work Orders (WOs) to appropriate shops for completion, e.g. maintenance, custodial, or health and safety"; and "follow up with the maintenance or custodial staff to ensure that they are adhering to agreed-upon standards for timely and accurate issue resolution." (*Id.* at 14, 16.)

With respect to the use of additional floor mats, Williams explained that additional mats would be required if there was "severe weather," but that additional mats were needed "[v]ery rarely" because there were "mats at all of the entrances" that "typically [were] sufficient to handle most of the normal traffic." (Williams Dep. at 12:11–22, ECF No. 28-5 at 3.) Williams testified that "[t]ypically it would not be the building manager or his staff putting out the mats. Typically it would be the custodial contractor putting out the mats if the mats were needed." (*Id.* at 40:9– 12.) She acknowledged "[t]here is a potential that [Hale] could call the Didlake supervisor and say 'I think we need to put the mats out' or 'please put the mats out'" but that "typically the custodial contractor is usually on top of" it. (*Id.* at 40:18–22.) When asked if Williams herself played any role in the decision to put mats out, she stated that "[t]ypically I don't get involved in that because that's part of the day-to-day operations of the building manager [Hale] and he would then make those decisions." (*Id.* at 67:10–13.) She added that "there is a possibility they could ask

for my opinion.  There is also a possibility that if I see something, that I could bring it to the attention of the facility manager." (*Id.* at 67:13–16.)  These additional mats were purchased by Hale, and kept in one of the custodial contractor's assigned storage areas. (*Id.* at 36:14–16, 38:7– 10, 39:1–3; *see also* ECF No. 27-4 at 12 (requiring the Government to furnish "[s]pace in the building for the storage of an inventory of supplies and equipment which will be used in the performance of work under the [Didlake] contract").)

Williams also explained that there are "wet floor signs[] by each of the doors.  And Didlake personnel typically when it's raining, they will go around and put out those wet floor signs at all of the entrances."  (Williams Dep. at 34:8–11, ECF No. 28-5 at 5.)  She added that there are "additional signs throughout the building in some of the custodial closets" and that "anybody can put those signs out" if "they see a leak or water on the floor," but "as a general routine, if the custodial folks see something, they will put it out[.]" (*Id.* at 34:12–35:7.)  Some of these additional signs that are put up in the hallways were purchased by the Government, "[b]ut the rest of them typically are custodial and are owned by Didlake[.]" (*Id.* at 37:11–15.)

For her part, Plaintiff testified that she was aware that contractors are responsible for maintenance of the Forrestal Building and that the "contracting people that normally take care of signs normally will be contacted to go and put the signs down."  (Nabinett Dep. at 27:7–19, Gov't Ex. 1, ECF No. 27-3 at 3.)  She also stated that "mats are always there" for safety purposes. (*Id.* at 28:4–9.)  She testified that "employees sometimes would call and say there is a wet area" and then maintenance would come and put out a yellow sign or cone warning that the floor was wet. (*Id.* at 48:10–11, 49:4–11.)

Plaintiff filed suit claiming that the Government, by and through its agents, servants, and/or employees, was negligent in failing to maintain the floor of the premises in safe condition, failing

5

to provide mats at the entrances to prevent water from being tracked in, and failing to warn Plaintiff of unsafe conditions. (*See generally* ECF No. 7-2.) The Court previously denied the Government's Motion to Dismiss for failure to state a claim. (Mem. Op., ECF No. 9; Order, ECF No. 10.) Following the close of discovery, (*see* Joint Status Report, ECF No. 24), the Government filed the instant Motion. (ECF No. 27.) The Government contends that the case should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because the independent contractor and discretionary function exceptions to the FTCA bar Plaintiff's claim. (*See* ECF No. 27-1.) Alternatively, the Government claims that Plaintiff has not established a prima facie case for negligence, warranting summary judgment in its favor. (*Id.*)

## II.    *Legal Standard*

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction,[3] which "is a question of law for the court, not the jury, to decide." *Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp.*, 53 F.4th 286, 292 (4th Cir. 2022). The Government has brought a factual challenge to subject matter jurisdiction, arguing that the facts supporting jurisdiction are not true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (distinguishing a factual challenge from a facial challenge, which asserts that the complaint fails to allege necessary jurisdictional facts). When a defendant raises a factual challenge to subject matter jurisdiction, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). In resolving a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings

---

[3] Plaintiff premises her opposition to the Government's motion entirely on Rule 56, which governs motions for summary judgment. (*See* Opp'n Mot. Summ. J., ECF No. 28 at 1; Mem. Supp. Opp'n Summ. J., ECF No. 28-1 at 6.) However, the Fourth Circuit has made clear that "[i]f the independent contractor or discretionary function exceptions apply to an FTCA claim, then the presiding court lacks subject matter jurisdiction to hear the claim" and should grant dismissal pursuant to Rule (12)(b)(1). *Krembel v. United States*, 837 F. App'x 943, 947 (4th Cir. 2020) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

without converting the proceeding to one for summary judgment." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014) (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)). The court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (internal quotation marks and citations omitted); *see also Blenheim Cap. Holdings Ltd.*, 53 F.4th at 292 ("[I]f the defendant disputes the facts alleged for jurisdiction, providing the court with contradicting facts, the court 'may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts.'" (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009))).

### III.   *Analysis*

Plaintiff brings suit pursuant to the FTCA, a statutory waiver of the Government's immunity from suit in civil tort cases. The Government argues that Plaintiff's claim falls under the independent contractor exception and the discretionary function exception to the FTCA, thereby depriving the Court of subject matter jurisdiction. Plaintiff has failed to establish that the FTCA's waiver of immunity applies to her claim. Accordingly, the Court will grant the Government's Motion to Dismiss.

#### A. *FTCA's Waiver of Sovereign Immunity*

As a general principle, "[a]bsent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." *Kerns*, 585 F.3d at 193–94. The FTCA represents just such a statutory waiver; however, by its terms, it applies to a narrow class of claims. Specifically, the Act confers jurisdiction on district courts "for claims brought against the United States based on the negligence or wrongful acts or omissions of its employees committed within the scope of employment, accepting liability in the same manner and to the same extent as a private individual would have under like circumstances." *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) (citing 28

7

U.S.C. §§ 1346(b)(1), 2671–2680)).  However, "[t]he FTCA explicitly excludes independent contractors from its scope." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d at 341 (citing 28 U.S.C. § 2671).  The Act also contains an explicit exception to its general waiver of sovereign immunity for claims arising out of the exercise of a discretionary function or duty.  *See* 28 U.S.C.§ 2680(a). Importantly, the FTCA, like any other waiver of sovereign immunity, must be "strictly construed in favor of the sovereign." *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005) (alteration omitted) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)); *accord Williams*, 50 F.3d at 305 ("Being a waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States.").

The Government's assertion of sovereign immunity implicates the Court's subject matter jurisdiction.  *See Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) ("[T]he Government's potential immunity from suit affects our jurisdiction[.]").  Accordingly, because Plaintiff bears the burden of establishing the Court's subject matter jurisdiction, she also "bears the burden of pointing to an unequivocal waiver of immunity." *Williams*, 50 F.3d at 304 (alteration and quotation omitted).  In the Fourth Circuit, a plaintiff must *affirmatively show* that the government's conduct does not fall within one of the exceptions to the FTCA's waiver of immunity.  *See Wood*, 845 F.3d at 127 ("Because waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction *and* showing that none of the FTCA's exceptions apply." (emphasis added)); *Welch*, 409 F.3d at 651 ("[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists *and* that none of the statute's waiver exceptions apply to [her] particular claim." (emphasis added)).  "If the plaintiff fails to meet this burden, then the claim must be dismissed." *Id.*

For the reasons stated below, Plaintiff has failed to show that the FTCA's independent contractor and discretionary function exceptions do not apply to her claim, and thus has failed to establish the Court's subject matter jurisdiction.

### B. Independent Contractor Exception

The Government argues that it has not waived its immunity as to Plaintiff's claim because it arises out of acts or omissions of an independent contractor—Didlake—rather than a government employee. While conceding that the Government contracted with Didlake for custodial duties, Plaintiff counters that Didlake was not responsible for installing additional floor mats or putting out wet floor signs when there was severe weather, and thus the independent contractor exception does not shield the Government from liability for the alleged breach. (Mem. Supp. Opp'n Mot. Summ. J., ECF No. 28-1 at 7–9.) She further avers that, even if Didlake was responsible for these tasks, it was not acting as an independent contractor. (*Id.* at 9.)

If Didlake "'is an independent contractor,' and is the party responsible for the alleged breach, 'the United States has not waived its sovereign immunity [and] the case should be dismissed for want of jurisdiction under Rule 12(b)(1).'" *Krembel v. United States*, 837 F. App'x 943, 947 (4th Cir. 2020) (quoting *Williams*, 50 F.3d at 304). "The fact that an independent contractor may have been responsible for [the plaintiff's] fall, however, cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." *Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992).

A contractor is "an employee or agent of the United States" under the FTCA "only where the Government has the power under the contract to supervise a contractor's 'day-to-day operations' and 'to control the detailed physical performance of the contractor.'" *U.S. Tobacco*

*Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 248 (4th Cir. 2018) (quoting *Wood v. Standard Prod. Co.*, 671 F.2d 825, 829 (4th Cir. 1982)).  The Fourth Circuit has "strictly construed this principle, explaining the Government's control over the 'primary activity contracted for' is the relevant analysis."  *Krembel*, 837 F. App'x at 947 (quoting *Williams*, 50 F.3d at 307).  The mere fact that the Government may issue directives, require compliance with federal standards, or retain the right to inspect a contractor's work does not convert the contractor into an agent of the Government for FTCA purposes.  *See Williams*, 50 F.3d at 306–07 ("[T]he United States will not be liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States actually supervises the 'day-to-day operations' of the endeavor." (quoting *Logue v. United States*, 412 U.S. 521, 529 (1973) and collecting cases)).

### 1. *Didlake was Responsible for the Alleged Breach*

Plaintiff has not met her burden of showing that a government employee or agent—rather than an independent contractor—is responsible for the alleged breach, and thus that a waiver of sovereign immunity exists with regard to her claim.

While the Didlake contract does not specifically refer to placing extra floor mats and wet floor signs when there was severe weather, the record reflects that Didlake—and not the Government—was responsible for these tasks.  The Didlake contract encompassed broad custodial functions, including to ensure main and secondary entrances and corridors were free from foreign substances.  (ECF No. 27-4 at 28–29.)  It required Didlake to "police" main lobbies and high traffic areas and to implement its own inspection system.  (*Id.* at 36, 50.)  The specific tasks that Plaintiff points to are closely related to these broad responsibilities outlined in the contract.  Indeed, the Government's representative stated that Didlake was responsible for "putting down additional

mats when additional mats are required when there are wet floors" and that "typically when it's raining, [Didlake personnel] will go around and put out those wet floor signs at all of the entrances." (Williams Dep. at 12:3–6, 34:8–11, ECF No. 28-5 at 3, 5.)  Plaintiff herself stated that "contracting people . . . normally take care of signs." (Nabinett Dep. at 27:17–19, ECF No. 27-3 at 3.)  Although some of the mats and signs were owned by the Government, they were stored in Didlake's assigned storage areas "so that they could get to them when they needed them." (Williams Dep. at 38:7–10, 38:22–39:3, ECF No. 28-5 at 6.)

Plaintiff puts great emphasis on Williams's statement that she typically was not involved in putting additional floor mats down because "that's part of the day-to-day operations of the building manager and he would make those decisions." (*Id.* at 67:10–13.) Plaintiff argues that this statement shows that the Government—and not Didlake—was responsible for putting down floor mats.  However, this statement does not, on its own, carry Plaintiff's burden to show that the independent contractor exception does not apply in the face of other evidence discussed above.

First, this statement was elicited in the context of explaining what Williams's role did *not* include, not in defining the contours of Hale's and Didlake's respective responsibilities.  Further, this characterization is not inconsistent with Hale's role as the COR on the Didlake contract, which included the responsibility to ensure work on the contract was done to appropriate standards, but did not create an affirmative duty to perform the work delegated to the contractor.  Finally, considered in combination with other testimony Williams gave, a logical interpretation of this statement is that Hale would bring it to Didlake's attention if he happened to notice a need for extra floor mats.  (*See id.* at 40:18–22 ("There is a potential that [Hale] could call the Didlake supervisor and say 'I think we need to put the mats out' or 'please put the mats out'" but that "typically the custodial contractor is usually on top of" it).)  It does not necessarily follow that,

despite having delegated all other maintenance functions to contractors, the Government retained the responsibility over these specific rainy weather precautions.[4]

Accordingly, Plaintiff has not established that Government employees or agents were responsible for the alleged breach. *Cf. Goewey v. United States*, 886 F. Supp. 1268, 1277 (D.S.C. 1995) ("After exhaustive discovery, Plaintiffs have been unable to put forward any consistent, reliable evidence that day-to-day maintenance was handled by the Navy Housing Office."), *aff'd sub nom. Goewey by Goewey v. United States*, 106 F.3d 390 (4th Cir. 1997).

### 2. *Didlake is an Independent Contractor for FTCA Purposes*

Plaintiff alternatively argues that, even if Didlake was responsible for installing additional floor mats and wet floor warning signs on rainy days, it was acting as an agent of the Government, rather than an independent contractor. The evidence shows, however, that the Government did not supervise Didlake's day-to-day operations such that Didlake was its agent for purposes of the FTCA. The contract specifically provided that "[n]o Government direction or supervision of [the] contractor's employees shall be exercised" and Didlake was to maintain its own inspection system. (ECF No. 27-4 at 11, 50.) The USF contract provided for further oversight of custodial duties. (ECF No. 27-7 at 10–11.)

Plaintiff again points to Williams's testimony as establishing that Hale was involved in the "day-to-day" operation of putting down extra floor mats and wet floor warning signs. However, it is "the Government's control over the 'primary activity contracted for' [that] is the relevant analysis." *Krembel*, 837 F. App'x at 947 (quoting *Williams*, 50 F.3d at 307). Moreover, it is not enough, as Plaintiff contends, that the Government may have been "*involved* in the 'day-to-day

---

[4] Further, even to the extent the contract did not explicitly cover the task of installing additional floor mats and/or warning signs, Plaintiff's claim that the Government can be held liable for its employees' failure to put out additional mats and warning signs is precluded by the discretionary function exception, as discussed below.

operations' of the installation of additional mats" and "of putting out wet floor signs"[5] (ECF No. 28-1 at 5, 9 (emphasis added)), and the COR's right to inspect Didlake's work does not convert Didlake into an agent of the Government. *See Williams*, 50 F.3d at 306–07.  Plaintiff has not shown that the "Government has the power under the contract to *supervise* [Didlake's] 'day-to-day operations' and 'to *control* the detailed physical performance of the contractor.'" *U.S. Tobacco Coop.*, 899 F.3d at 248 (emphasis added), as is required to hold the Government liable under the FTCA. *See Graham v. United States*, Civ. No. 2:16-03863-DCN, 2018 WL 1124284, at *4 (D.S.C. Mar. 1, 2018) (finding independent contractor exception barred suit despite evidence that a government manager had noticed a leaking air conditioner and instructed a contracted custodial worker to put up wet floor signs and mop the floor, where contract stated that contract personnel were not under Government supervision).

Accordingly, Plaintiff has not shown that the Government had the requisite physical control over Didlake's day-to-day operations such that Didlake was its agent for FTCA purposes, and the United States therefore cannot be held liable for Didlake's conduct.

### C. Discretionary Function Exception

The Government further argues that it is insulated from liability for its decision to hire Didlake to perform custodial tasks under the discretionary function exception to the FTCA.  This exception provides that the United States will not be liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the

---

[5] Plaintiff cites *Williams* for the proposition that "'The United States will not be liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards' unless the United States actually supervises *or is involved in* the 'day-to-day operations' of the endeavor." (ECF No. 28-1 at 7 (emphasis added) (quoting *Williams*, 50 F.3d at 306).)  *Williams*, however, makes no mention of holding the United States liable based on its *involvement* in a contractor's day-to-day operations, but rather states that "the United States will not be liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States actually *supervises* the 'day-to-day operations' of the endeavor." *Williams*, 50 F.3d at 306 (emphasis added) (quoting *Logue*, 412 U.S. at 529).

failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The exception applies to acts or omissions that (1) involve "judgment or choice," i.e., the challenged action is not prescribed by a federal statute, regulation, or policy, and (2) are "based on considerations of public policy." *Williams*, 50 F.3d at 309.  The applicability of this exception "does not depend on whether the government employee had subjective knowledge of his discretion or subjectively intended to exercise it; the analysis must focus objectively on 'the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Wood*, 845 F.3d at 128 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

The Secretary of Energy "is authorized to enter into and perform such contracts, leases, cooperative agreements, or other similar transactions with public agencies and private organizations and persons . . . as he may deem to be necessary or appropriate to carry out functions now or hereafter vested in the Secretary." 42 U.S.C. § 7256(a).  Under similar facts in *Williams*, the Fourth Circuit held that the discretionary exception applied to the decision to hire an independent contractor because "there is not a prescribed course of conduct for engaging custodial and maintenance services; rather, the Assistant Attorney General has the authority to procure such services and is permitted to exercise his discretion in engaging such services." 50 F.3d at 309. Further, this decision in *Williams* was grounded in policy because the Government "had to balance the needs of the Premises and the desire to engage an independent contractor against the expense of engaging such services," which involves "weigh[ing] concerns of expense, administration, payment, access to the Premises, and a veritable plethora of factors[.]" *Id.* at 309–10.

Plaintiff does not directly dispute that the decision to engage Didlake for custodial work is covered by the discretionary function exception, but claims that the decision to put out additional

14

floor mats and warning signs is not protected by the discretionary function exception. (ECF No. 28-1 at 12–14.)  However, as in *Williams*, "[g]iven that the decision to engage [Didlake] falls within the ambit of the discretionary function exception," Plaintiff's "assertions that the United States was negligent in" not installing floor mats and "not posting warning signs cannot prevail because these decisions are embraced by the overarching decision to engage [Didlake]." *See* 50 F.3d at 310 (rejecting argument that, separate from the allegedly negligent conduct of an independent contractor, the Government's failure to post wet floor warning signs caused the plaintiff to slip and fall).

This conclusion is reinforced by the fact that the Government also made the decision to contract with USF to inspect Didlake's work, generally "inspect buildings and grounds for the purpose of ensuring safe and orderly conditions," and triage requests for maintenance and cleaning. (ECF No. 27-7 at 10–11, 13–14); *see Parrish v. United States*, 157 F. Supp. 3d 434, 440–41 (E.D.N.C. 2016) (reasoning that "[i]f the government's duty to inspect was delegated to an independent contractor, the United States is protected from claims arising out of other, collateral failures, such as a 'failure to warn,'" which would "necessarily require inspection" (citing *Williams*, 50 F.3d at 310)).

Accordingly, the discretionary function exception to the FTCA provides an additional basis for finding that the Court does not have subject matter jurisdiction to hear Plaintiff's claim.

## IV.     *Conclusion*

For the forgoing reasons, Plaintiff's claim must be dismissed without prejudice. *See Orr v. U.S. EPA*, No. 21-1222, 2022 WL 3334630, at *1 (4th Cir. Aug. 12, 2022) (instructing that dismissal on jurisdictional grounds should be without prejudice).  A separate Order will issue.

15

DATED this _28_ day of April, 2023.

BY THE COURT:

James K. Bredar
Chief Judge